UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHANE MARTINEAU,

                          Plaintiff,

                                                          9:17-CV-0983
v.                                                        (LEK/ML)

DARREL NEWELL, Correction Officer,
Clinton County Jail; DOUG BAKER,
Correction Officer, Clinton County Jail;
and SUE KINTER, Nurse Administrator,
Clinton County Jail,

                          Defendants,
_____

APPEARANCES:                                              OF COUNSEL:

SHANE M. MARTINEAU
   Plaintiff, *Pro Se*
Five Points Correctional Facility
Caller Box 119
Romulus, New York 14541

MURPHY BURNS LLP                                          THOMAS K. MURPHY, ESQ.
   Counsel for Defendants
407 Albany Shaker Road
Loundonville, New York 12211

MIROSLAV LOVRIC, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION</u>

This matter has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, United States District Judge.  Currently before the Court, in this civil rights action filed by Shane M. Martineau ("Plaintiff") against Darrel Newell, Correction Officer, Clinton County Jail, Doug Baker, Correction Officer, Clinton County Jail, and Sue Kinter, Nurse Administrator, Clinton County Jail (collectively "Defendants"), is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  (Dkt. No. 28).  For the reasons set forth below, I recommend that Defendants' motion be granted in part and denied in part.

# TABLE OF CONTENTS

I.      RELEVANT BACKGROUND ................................................................................. 1

    A.    Plaintiff's Claims ......................................................................................... 1

    B.    Statement of Undisputed Material Facts .................................................... 1

    C.    Parties' Briefing on Defendants' Motion for Summary Judgment ........................... 7

II.     LEGAL STANDARD GOVERNING A MOTION FOR SUMMARY JUGDMENT ............. 8

III.    ANALYSIS ............................................................................................................ 11

    A.    Plaintiff's Excessive Force Claim ............................................................. 11

    B.    Plaintiff's Medical Indifference Claim Against Defendant Kinter ........................... 16

I.      **RELEVANT BACKGROUND**

A.      **Plaintiff's Claims**

Generally, liberally construed, Plaintiff's Complaint asserts the following two causes of action: (1) a claim of excessive force against Defendants Newell and Baker pursuant to the Fourteenth Amendment; and (2) a claim of medical indifference against Defendant Kinter pursuant to the Fourteenth Amendment.  (Dkt. No. 1; Dkt. No. 5.)

B.      **Statement of Undisputed Material Facts**

Unless otherwise noted, the following facts were asserted and supported by Defendants in their Rule 7.1 Statement and not denied by Plaintiff in a Rule 7.1 Response.  (*Compare* Dkt. No. 28, Attach. 6 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 32 [Pl.'s Response].)

1.      On June 4, 2017, Correction Officers at the Clinton County Correctional Facility (CCCF) conducted a search of Plaintiff's cell.[1]

---

[1]      In the future, defense counsel is cautioned to comply with Local Rule 7.1(a)(3), which provides that "[e]ach fact listed shall set forth a specific citation to the record where the fact is established."  *See also Robert H. Law, Inc. v. Woodbine Bus. Park, Inc.*, 13-CV-1393, 2018 WL 851382, at *5 (N.D.N.Y. Feb. 12, 2018) (Suddaby, C.J.) ("[T]he Court does not accept this as an undisputed fact . . . [because] Defendant cited generally to the entire affidavit of Derek Tarolli rather than to a specific portion of that affidavit where its assertion is supported"); *Rizzo v. Health Research, Inc.*, 12-CV-1397, 2016 WL 632546, at *2 (N.D.N.Y. Feb. 16, 2016) (Suddaby, C.J.) ("Of these 136 denials, 117 denials do not contain a specific citation to the record. Therefore, the facts 'denied' by these paragraphs will be deemed admitted."); *Benson v. Otis Elevator Co.*, 10-CV-3246, 2012 WL 4044619, at *1, n.1 (S.D.N.Y. Sept. 13, 2012) (deeming fact asserted by movant to be admitted by non-movant where non-movant supported denial "only with non-specific citations to the entire testimony of several witnesses"); *Janneh v. Regal Entm't*, 07-CV-0079, 2009 WL 2922830, at *1, n.3 (N.D.N.Y. Sept. 8, 2009) (McAvoy, J.) ("In response . . . Janneh filed a 'Statement of Material Facts Not in Dispute.' . . .  The document consists of . . . a phrase at the end of the document stating simply: 'See Attached Exhibits.' Janneh's statement fails to comply with the Local Rules which Janneh has repeatedly been advised about . . . ."); *Univ. Calvary Church v. City of New York*, 96-CV-4606, 2000 WL 1538019, at *2, n.6 (S.D.N.Y. Oct. 17, 2000) ("Despite the clear language of Rule 56 requiring specificity, Plaintiffs rarely offers an exact cite in support of their version of the facts. . . . [A] vague cite to all of the exhibits is simply unacceptable.")

2.     The search of Plaintiff's cell by the Correction Officers resulted in the discovery of numerous items that were in violation of the rules at CCCF.

3.     After the search of Plaintiff's cell was complete, he was ordered to lock in his cell.

4.     A Sergeant and other Correction Officers arrived at Plaintiff's cell and the Sergeant ordered Plaintiff to lock in his cell but Plaintiff refused.

5.     The Sergeant sprayed Plaintiff with OC spray.[2]

6.     After Plaintiff was sprayed with OC spray, he was brought to the floor.

7.     While on the floor, Plaintiff was placed in restraints.

8.     Plaintiff claims that during the struggle on the floor, Defendant Newell punched him with a closed fist twice in the face and that Defendant Baker kicked him from behind in his genital area.

9.     In a grievance filed on June 4, 2017, Plaintiff stated "I was kicked between my legs by another officer which I believe was Officer Baker."

10.     During his deposition, Plaintiff testified that he did not see someone kick him, but he felt that he was kicked in the genital area.

11.     During his deposition, Plaintiff testified that he felt the kick in his genital area and immediately turned his neck and saw Defendant Baker standing behind him without anyone else around.

---

[2]     "[O]leoresin capsicum ("OC") spray, commonly known as pepper spray." *Burwell v. Peyton*, 131 F. Supp. 3d 268, 281 (D. Vt. 2015).

12.     After the Officers stood Plaintiff up from the floor, he was taken to the Medical

Unit to be decontaminated from the effects of the OC spray.[3]

13.     Plaintiff's medical records dated June 4, 2017, state that his head and arms were

cleaned with baby shampoo because he had been pepper sprayed.[4]

14.     Plaintiff's medical records dated June 4, 2017, state that Plaintiff made "no

complaints of respiratory discomfort," but the records do not indicate whether any other pain or

injuries were observed by or discussed with medical providers.[5]

---

[3]     The Court notes that the citations to Defendant Newell's Affidavit (Dkt. No. 28, Attach. 3 at ¶ 8) and Defendant Baker's Affidavit (Dkt. No. 28, Attach. 4 at ¶ 11) do not support the fact asserted.  In fact, there is no paragraph 11 to Defendant Baker's Affidavit.  (*See generally* Dkt. No. 28, Attach. 4.)  However, the fact is admitted by Plaintiff (Dkt. No. 32 at ¶ 15) and there is other support for the fact asserted in the record (Dkt. No. 28, Attach. 3 at ¶ 11; Dkt. No. 28, Attach. 4 at ¶ 8).

[4]     Defendants support this fact with a citation to medical records attached as an exhibit to an affidavit of Thomas K. Murphy, Esq.  (Dkt. No. 28, Attach. 2 at ¶ 2; Dkt. No. 28 Attach. 8 at 6.)  There is no evidence before the Court that this exhibit is introduced by an affiant who possesses personal knowledge sufficient to admit the exhibit into evidence.  *See generally Estate of D.B. v. Thousand Islands Cent. Sch. Dist.*, 15-CV-0484, 327 F. Supp. 3d 477, 485 n.2 (N.D.N.Y. 2018) (Suddaby, C.J.) (finding that denial of the ability to confirm an assertion of fact insufficient to create an issue of fact for trial where the denial is based on lack of personal knowledge).  However, because Plaintiff admitted the fact, the Court will deem this fact admitted.

[5]     Plaintiff denies the fact as asserted by Defendants (Dkt. No. 32 at ¶ 17) and cites to his affidavit where he asserts that "I asked for my injuries to be photographed and documented but was ignored by all officers and medical staff said I was just their (sic) to be decontaminated." (Dkt. No. 32, Attach. 1 at ¶ 8.)  Plaintiff's affidavit does not dispute the contents of the medical records but instead attempts to controvert an implication of the fact asserted, which is improper in a Rule 7.1 Response.  *See Goldstick v. The Hartford, Inc.*, 00-CV-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (striking plaintiff's Rule 56.1 Statement, in part, because plaintiff added "argumentative and often lengthy narrative in almost every case the object of which is to 'spin' the impact of the admissions plaintiff has been compelled to make"); *Yetman v. Capital Dist. Transp. Auth.*, 12-CV-1670, 2015 WL 4508362, at *10 (N.D.N.Y. July 23, 2015) (Suddaby, J.) (citing authority for the point of law that summary judgment procedure involves the disputation of asserted facts not implied facts).   To the extent that a non-movant desires to set forth any additional material facts that he contends are in dispute, he is required by Local Rule 7.1(a)(3) to do so in separately numbered paragraphs.

15. Plaintiff's medical records indicate that on June 6, 2017, Plaintiff was examined in the medical unit by CCCF's Physician's Assistant, Robin Hinson.

16. Plaintiff's medical records dated June 6, 2017, state that Plaintiff "got maced this weekend from being combative."[6]

17. Plaintiff's medical records dated June 6, 2017, reflect that Plaintiff was escorted to the medical unit by a mental health counselor for a change in his mental health medication, which was completed by Physician's Assistant Hinson.

18. Plaintiff's medical records dated June 6, 2017, do not contain any statement that Plaintiff complained of pain or injury as a result of the incident on June 4, 2017. In addition, the medical records of June 6, 2017, do not contain any observations of pain or injury by the treatment provider.[7]

19. Plaintiff's medical records do not reflect that he suffered any injury to his face during the incident that occurred on June 4, 2017.[8]

20. Plaintiff's medical records do not reflect that he suffered any injury to his genital area during the incident that occurred on June 4, 2017.[9]

---

[6] Again, Plaintiff improperly denies this fact (Dkt. No. 32 at ¶ 19) by controverting an implication of the fact asserted. *See, supra,* note 5.

[7] Again, Plaintiff improperly denies this fact (Dkt. No. 32 at ¶ 21) by controverting an implication of the fact asserted. *See, supra,* note 5.

[8] Again, Plaintiff improperly denies this fact (Dkt. No. 32 at ¶ 22) by controverting an implication of the fact asserted. *See, supra,* note 5.

[9] Again, Plaintiff improperly denies this fact (Dkt. No. 32 at ¶ 23) by controverting an implication of the fact asserted. *See, supra,* note 5.

21.     Plaintiff's grievance regarding the incident that occurred on June 4, 2017, was investigated and denied by CCCF.  The denial of the grievance was appealed and sustained by the New York State Commission of Correction.

22.     Records at CCCF indicated that Plaintiff was examined by mental health personnel on the following four dates: (1) March 7, 2017; (2) April 13, 2017; (3) June 5, 2017; and (4) July 10, 2017.

23.     Plaintiff's mental health records do not contain any record of Plaintiff being seen on June 20, 2017, or that he was referred to the medical unit for placement on the list to see the jail physician on June 20, 2017.[10]

24.     Plaintiff's medical records indicate that he was seen in the medical unit on June 20, 2017, by Physician's Assistant Hinson.

25.     After being examined on June 20, 2017, Plaintiff did not make any request of the medical unit to be seen by a physician until July 25, 2017.

26.     Plaintiff was examined in the medical unit on July 10, 2017, and the medical records from that visit do not reflect any request by Plaintiff to see a physician or that Plaintiff was prescribed Trazadone.[11]

27.     On July 25, 2017, at 7:15 P.M., Plaintiff filed a grievance alleging that he had been seen by the mental health unit and was referred to see the doctor and be prescribed Trazadone, but that the nurses refused to put him on the list to see the doctor.

---

[10]     Again, Plaintiff improperly denies this fact (Dkt. No. 32 at ¶ 26) by controverting an implication of the fact asserted.  *See, supra,* note 5.

[11]     Again, Plaintiff improperly denies this fact (Dkt. No. 32 at ¶ 29) by controverting an implication of the fact asserted.  *See, supra,* note 5.

28.    On July 26, 2017, Plaintiff was placed on the list to see the doctor by Defendant Kinter.

29.    On July 26, 2017, Plaintiff agreed to accept the resolution of his grievance after he was placed on the list to the see the physician.

30.    On August 8, 2017, Plaintiff was seen in the medical unit by Physician's Assistant Hinson.  The medical record for that visit indicates that Plaintiff told Physician's Assistant Hinson that he had been seen by the mental health unit and that the mental health personnel wanted him to be prescribed Trazadone at bedtime.  Physician's Assistant Hinson then prescribed Trazadone for Plaintiff.

31.    On July 26, 2017, Defendant Kinter placed Plaintiff's name on the list of inmates to be seen by the CCCF physicians.  The list consisted of the names of inmates that needed to be seen soon by the physician for urgent matters including emergency matters and new inmates in the facility who were required to have physicals conduced within a statutory time.  Plaintiff's need or desire to see the physician was not deemed urgent by mental health staff and he was seen by Physician's Assistant Hinson in the regular course of operation of the medical unit. [12]

---

[12]    Plaintiff denies this fact (Dkt. No. 32 at ¶ 35) and asserts that his "mental health needs not deemed urgent by mental health staff doesn't make sense when all mental health problems take priority."  (Dkt. No. 32, Attach. 1 at ¶ 13.)  Plaintiff appears to challenge the credibility of Defendant Kinter, which does not create an issue of fact for trial.  *McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 280 (2d Cir. 1999) (explaining that a plaintiff does not create a genuine issue of fact merely by "impugning [a witness'] honesty"); *Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP*, 869 F. Supp. 2d 378, 391 (S.D.N.Y. 2012) ("Neither conclusory assertions, nor contentions that the affidavits supporting the motion are not credible, create a genuine issue of material fact."); *Chem. Bank v. Hartford Acc. & Indem. Co.*, 82 F.R.D. 376, 378 (S.D.N.Y.1979) ("[A] naked attack upon the affidavits of a moving party is, without more, insufficient to place the credibility of the affiant in issue.").  As a result, this fact is deemed admitted.

### C.    Parties' Briefing on Defendants' Motion for Summary Judgment

#### 1.    Defendants' Memorandum of Law

Generally, in support of their motion to for summary judgment, Defendants assert three

arguments.  (*See generally* Dkt. No. 28, Attach. 7 [Defs.' Mem. of Law].)

First, Defendants argue that Plaintiff's Fourteenth Amendment medical indifference

claim against Defendant Kinter must be dismissed because (a) the medical records do not support

Plaintiff's allegation that he was referred to the medical unit by the mental health unit on June

20, 2017, to obtain a prescription for Trazadole, (b) the following day after Plaintiff filed a

grievance on July 25, 2019, his name was placed on the list to see the doctor, (c) on August 8,

2017, Plaintiff was prescribed Trazadole by Physician's Assistant Hinson, (d) the medical

records reflect that Plaintiff was not in any acute distress when he was evaluated by medical

professionals between June 20, 2017 and August 8, 2017, (e) there is no evidence to show that

Plaintiff suffered any ill effects because of a delay in being prescribed Trazadole, and (f) there is

no evidence to show that Plaintiff was referred by the mental health unit to see the doctor and

that Defendant Kinter ignored such a referral.  (*Id.* at 7-11.)

Second, Defendants argue that Plaintiff's Fourteenth Amendment excessive force claim

against Defendants Newell and Baker must be dismissed because the record establishes that the

force used was reasonable in response to Plaintiff's CCCF rule violations, refusal of orders to

lock in his cell, and resisting the correction officers' attempts to restrain him.  (*Id.* at 11-17.)  In

addition, Defendants argue that Plaintiff did not see anyone kick him nor did he see Defendant

Baker make contact with him.  (*Id.*)  Moreover, Defendants assert that Plaintiff's medical records

do not reflect any complaints or observations of pain or injury.  (*Id.*)  As a result, Defendants

argue that in light of Defendants Newell and Baker's denials and the other objective evidence in

the record, Plaintiff's mere assertion that he was punched and kicked is insufficient to create a

genuine issue of material fact regarding whether excessive force was used in violation of Plaintiff's constitutional rights.  (*Id.*)

Third, Defendants argue that, in any event, they are entitled to qualified immunity because their actions were objectively reasonable.  (*Id.* at 17-18.)

### 2.    Plaintiff's Opposition

Generally, in opposition to Defendants' motion for summary judgment, Plaintiff filed a response to Defendants' Statement of Material Facts (Dkt. No. 32) and an affidavit (Dkt. No. 32, Attach. 1), which set forth factual assertions.  However, Plaintiff did not file an opposition memorandum of law or any document that responded to Defendants' legal arguments.  (*See generally* Dkt. No. 32 [Pl.'s Opp'n].)

## II.    LEGAL STANDARD GOVERNING A MOTION FOR SUMMARY JUGDMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[13]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant.  *Anderson*, 477 U.S. at 255.

---

[13]    As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-movant is proceeding *pro se*.[14] (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[15] As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[16]

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v.*

---

[14]    *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

[15]    *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

[16]    *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

*Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[17]–even when the non-movant was proceeding *pro se*.[18]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[19]  Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined

---

[17]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[18]     *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases); *see also Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (Hurd, J.) (holding that the Court is not required to "perform an independent review of the record to find proof of a factual dispute.").

[19]     *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]); *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

that the moving party has met its burden to demonstrate entitlement to the relief requested

therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct.

30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009

WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III.    ANALYSIS

### A.    Plaintiff's Excessive Force Claim

After carefully considering the matter, the Court recommends denying Defendants'

motion for summary judgment regarding Plaintiff's excessive force claim against Defendants

Newell and Baker because there are genuine issues of material fact about whether the amount of

forced used was reasonable.

"[A] pretrial detainee must show only that the force purposefully or knowingly used

against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473

(2015).  "[O]bjective reasonableness turns on the 'facts and circumstances of each particular

case.'" *Kingsley*, 135 S. Ct. at 2473 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

"Considerations such as the following may bear on the reasonableness or unreasonableness of

the force used: the relationship between the need for the use of force and the amount of force

used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the

amount of force; the severity of the security problem at issue; the threat reasonably perceived by

the officer; and whether the plaintiff was actively resisting." *Id*. (citing *Graham*, 490 U.S. at

396).

Genuine issues of material fact exist regarding the amount of force that was necessary for

Defendants Baker and Newell to use under the circumstances on June 4, 2017.  Although

Plaintiff concedes that the search of his cell resulted in the discovery of numerous items that

were in violation of the rules at CCCF (Dkt. No. 32 at ¶ 2) and that he was ordered to lock in his cell but he refused (*id.* at ¶ 4-5), there are disputed issues of material fact regarding the extent to which Plaintiff continued to be uncooperative and whether the correction officers' use of force was reasonable under the circumstances.

For example, Plaintiff affirmed that he "was never belligerent or threatening in [his] demeanor toward any correction officer[]." (Dkt. No. 32, Attach. 1 at ¶ 2.) However, Defendant Newell affirmed that "[d]uring the search of [P]laintiff's cell, [P]laintiff got very agitated and started swearing at [him] and the other Correction Officers" (Dkt. No. 28, Attach. 3 at ¶ 4); Defendant Baker affirmed that "[w]hile . . . searching [P]laintiff's cell, [Plaintiff] became very agitated, belligerent, and threatening in his language and demeanor toward [Defendant Baker] and the other Officers" (Dkt. No. 28, Attach. 4 at ¶ 4). Moreover, Plaintiff affirmed that he "only refused to lock in [his] cell until the [sergeant] came [but that] once [the sergeant] entered the cell block he immediately sprayed [Plaintiff with pepper spray] and never let [Plaintiff] explain." (Dkt. No. 32, Attach. 1 at ¶ 3.) In contrast, Defendant Newell affirmed "Sgt. LeDuc ordered [P]laintiff to lock in his cell and [P]laintiff refused . . . Sgt. LeDuc repeated his order and warned [P]laintiff that if he didn't lock in, he was going to get sprayed with OC spay. Plaintiff continued to be confrontational, again refused to lock in, and said to Sgt. LeDuc 'Go ahead,'" (Dkt. No. 28, Attach. 3 at ¶¶ 6-7); Defendant Baker affirmed that "Plaintiff then refused multiple orders by Sgt. LeDuc to lock in his cell and continued to be non-compliant to verbal commands," (Dkt. No. 28, Attach. 4 at ¶ 6). In addition, Plaintiff affirmed that after Sergeant LaDuc administered OC spray, Plaintiff was taken to the ground, and that while on the ground he "did not struggle or resist any of the officers['] efforts." (Dkt. No. 32, Attach. 1 at ¶ 5.) However, Defendant Newell affirmed that "[o]nce on the floor, [P]laintiff continued to struggle and resist Officers' attempts

to gain control of him risking injury to himself and the Officers" (Dkt. No. 28, Attach. 3 at ¶ 10);

Defendant Baker affirmed "[w]hile on the floor, [P]laintiff resisted the Officers' efforts to place

him in restraints," (Dkt. No. 28, Attach. 4 at ¶ 7).  Furthermore, Plaintiff affirmed that "[w]hile

[he] was on the floor and in restraints, [he] was punched in the face by Officer Newell and

kick[ed] in the genitals by Officer [B]aker."  (Dkt. No. 32, Attach. 1 at ¶ 6.)  In contrast,

Defendant Newell affirmed that he did not punch Plaintiff "in the face during the time that he

was on the floor resisting the Officers' efforts to place him in restraints" instead, Defendant

Newell's "only physical contact with [Plaintiff] was [his] effort to assist in securing [Plaintiff's]

left arm using soft hand tactics so that it could be placed in restraints" (Dkt. No. 28, Attach. 3 at

¶ 12); Defendant Baker affirmed that he did not "kick [P]laintiff in any part of his body" instead,

Defendant Baker's "only physical involvement with [P]laintiff was in trying to subdue his legs

so that he could be placed in restraints by the other Officers," (Dkt. No. 28, Attach. 4 at ¶ 9).

These types of factual determinations should be made by a jury rather than a judge.  *See*

*Robinson v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) ("[T]he parties have provided conflicting

accounts as to [who] initiated the use of force, how much force was used by each, and whether

[the plaintiff] was reaching toward [the officer]'s gun.  Resolution of credibility conflicts and the

choice between these conflicting versions are matters for the jury and [should not be] decided by

the district court on summary judgment.").

In addition, Defendants argue that because Plaintiff did not see (1) a foot make contact

with his genital area (Dkt. No. 28, Attach. 13 at 40), or (2) the officer who administered the

alleged kick (*id*. at 40-41), he is merely making assumptions and thus, his claim against

Defendant Baker should be dismissed.   However, Plaintiff testified that he felt a foot make

contact in his genital area, and that he immediately turned around and saw Defendant Baker

standing behind him and no other officers around.  (*Id.* at 40-41.)  Resolving all ambiguities and

drawing all reasonable inferences against Defendants, the Court finds that Plaintiff's testimony is

sufficient to establish a genuine issue of material fact regarding whether Plaintiff was kicked in

the genital area by Defendant Baker on June 4, 2017.

Finally, Defendants argue that, in any event,[20] they are shielded from liability based on

the doctrine of qualified immunity.

Qualified immunity shields federal and state officials from suit "'unless [1] the official

violated a statutory or constitutional right that [2] was clearly established at the time of the

challenged conduct.'"  *Terebesi v. Torreso,* 764 F.3d 217, 230 (2d Cir. 2014) (quoting *Reichle v.*

*Howards,* 566 U.S. 658, 664 (2012)).  "A right is 'clearly established' if 'it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted.'"  *Beckles v. City*

*of New York,* 492 F. App'x 181, 182 (2d Cir. 2012) (quoting *Saucier v. Katz,* 533 U.S. 194, 202

(2001)).  "'Where the circumstances are in dispute, and contrasting accounts present factual

issues as to the degree of force actually employed and its reasonableness, a defendant is not

entitled to judgment as a matter of law on a defense of qualified immunity.'"  *Curry v. City of*

*Syracuse,* 316 F.3d 324, 334 (2d Cir. 2003) (quoting *Mickle v. Morin,* 297 F.3d 114, 122 (2d Cir.

2002)).

---

[20]     Despite also asserting that Defendant Kinter is not liable based on the doctrine of
qualified immunity, I do not consider that argument because I recommend dismissal of Plaintiff's
claims against Defendant Kinter in Part III.B. of this Report-Recommendation.  *See Armand v.*
*Simonson*, 12-CV-7709, 2016 WL 1257972, at *15 (S.D.N.Y. Mar. 30, 2016) ("[b]ecause the
Court dismisses Plaintiff's claim against Peterson, there is no need to consider whether she may
also be entitled to qualified immunity."); *see also Posr v. City of New York*, 10-CV-2551, 2013
WL 2419142, at *10, n.8 (S.D.N.Y. June 4, 2013) ("Because [the defendant] did not violate [the]
[p]laintiff's [constitutional] rights, there is no need to consider if [the defendant] is entitled to
qualified immunity."), *aff'd sub nom. Posr v. Ueberbacher*, 569 F. App'x 32 (2d Cir. 2014).

The existence of factual disputes precludes a finding of qualified immunity because "[t]he reasonableness of a police officer's conduct is at issue in both a [Fourteenth] Amendment excessive force analysis as well as step two of the qualified immunity test." *Benson v. Yaeger,* 05-CV-784S, 2009 WL 1584324, at *6 (W.D.N.Y. June 3, 2009) (citing *Cowan v. Breen,* 352 F.3d 756, 764 (2d Cir. 2003)). "[I]n excessive force cases, the qualified immunity and [Fourteenth] Amendment analyses often overlap and present a single question: '[w]hether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed would be lawful.'" *Piper v. City of Elmira,* 12 F. Supp. 3d 577, 591 (W.D.N.Y. Mar. 28, 2014) (quoting *Benson*, 2009 WL 1584324, at *6).

Accordingly, when there are "factual disputes concerning the level of force that was used and whether Plaintiff resisted arrest or presented an objectively reasonable threat to the officers' safety," the granting of qualified immunity on summary judgment is inappropriate. *Marcano v. City of Schenectady,* 38 F. Supp. 3d 238, 263, (N.D.N.Y. Aug. 13, 2014) (McAvoy, J.); *see also Breen v. Garrison,* 169 F.3d 152, 153 (2d Cir. 1999) (issues of fact on reasonableness of force used preclude summary judgment on defense of qualified immunity); *Piper,* 12 F. Supp. 3d at 591 ("In this case, my determination that issues of material fact exist as to the reasonableness of the officers' use of force justifies denial of summary judgment on the grounds of qualified immunity."). Therefore, Defendants Newell and Baker are not entitled to summary judgment on the issue of qualified immunity.

As a result, I recommend that that Defendants' motion for summary judgment on Plaintiff's excessive force claim be denied.

### B.    Plaintiff's Medical Indifference Claim Against Defendant Kinter

After carefully considering the matter, the Court recommends granting Defendants' motion for summary judgment with regard to Plaintiff's medical indifference claim for the reasons stated in their memorandum of law.  (Dkt. No. 28, Attach. 7.)  To those reasons, the Court adds the following analysis, which is intended to supplement but not supplant Defendants' reasons.

Pretrial detainees "receive protection against mistreatment at the hands of prison officials under . . . the Due Process Clause of the Fourteenth Amendment" rather than under the cruel and unusual punishment clause of the Eighth Amendment.  *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  Unlike a convicted prisoner, a pretrial detainee may not be punished in any manner, "neither cruelly and unusually nor otherwise."  *Darnell*, 849 F.3d at 29.

A claim alleging that jail officials have violated an inmate's Fourteenth Amendment rights by denying proper and adequate medical care must satisfy a two-pronged test.  "The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind." *Wright v. Genovese*, 694 F. Supp. 2d 137, 153 (N.D.N.Y. 2010) (Kahn, J.).

To meet the objective requirement, the alleged deprivation must be "sufficiently serious." *Wright*, 694 F. Supp. 2d at 153-54; *see also Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) ("[T]he objective test asks whether the inadequacy in medical care is sufficiently serious.").  Factors informing this inquiry include "whether a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain."  *Salahuddin*, 467 F.3d at 280 (quotation marks and alterations omitted).  Determining whether a deprivation is

sufficiently serious requires a court to examine the seriousness of the deprivation, and whether

the deprivation represents "a condition of urgency, one that may produce death, degeneration, or

extreme pain[.]" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quotation marks omitted).

Importantly, it is "the particular risk of harm faced by a[n inmate] due to the challenged

deprivation of care, rather than the severity of the [inmate]'s underlying medical condition,

considered in the abstract, that is relevant." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir.

2003).

To satisfy the subjective requirement, a plaintiff must demonstrate that the defendant had

"the necessary level of culpability, shown by actions characterized by 'wantonness.'" *Blyden v.

Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999). "In medical-treatment cases . . ., the official's state of

mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the

plaintiff proves that the official acted with deliberate indifference to inmate health." *Salahuddin*,

467 F.3d at 280. "Deliberate indifference," in a constitutional sense, "requires that the charged

official act or fail to act while actually aware of a substantial risk that serious inmate harm will

result." *Id.*; *see also Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists, and he must

also draw the inference."). "Deliberate indifference is a mental state equivalent to subjective

recklessness, as the term is used in criminal law." *Salahuddin*, 467 F.3d at 280 (citing *Farmer*,

511 U.S. at 839-40).

Based upon the record now before the Court, I conclude that Plaintiff cannot meet either

element of the governing deliberate indifference test. Plaintiff alleged that on June 20, 2017, he

was seen by the mental health unit and referred to the physician to be prescribed Trazadone.

(Dkt. No. 1 at 5.) Plaintiff further alleged that he was "refused by nurse Kinter to be placed on

the list for the doctor for [his] mental health meds.  After a grievance [he] was placed on the list on" July 26, 2017.  (*Id.*)  As a result, Plaintiff alleges a delay of thirty-six (36) days.

Plaintiff fails to identify any evidence in the record that he suffered any harm, let alone substantial harm, that resulted from the delay in treatment.  *Miller v. Ramineni*, 14-CV-1351, 2016 WL 1523684, at *6 (N.D.N.Y. Feb. 29, 2016) (Hummel, M.J.) (citing *Colon v. Plescia,* 07-CV-0727, 2009 WL 2882944, at *4 (N.D.N.Y. July 27, 2009) (Peebles, M.J.)) ("Although a delay in medical care can demonstrate deliberate indifference, the plaintiff 'must show that a substantial harm resulted from the delay itself.'"), *report and recommendation adopted*, 2016 WL 1261125 (Mar. 30, 2019) (Hurd, J.).  Instead, Plaintiff's medical and mental health records from June 20, 2017, until August 8, 2017 (the date he was prescribed Trazadone by Physician's Assistant Hinson), indicate that he was not in any acute distress and was not experiencing homicidal or suicidal ideations.  (Dkt. No. 28, Attach. 11 at 5-6; Dkt. No. 28, Attach. 12 at 7-8.)

In addition, and in the alternative,[21] Plaintiff also failed to adduce any evidence to give rise to a genuine dispute of material fact with respect to whether Defendant Kinter refused to place Plaintiff on the list to see the doctor with the requisite deliberate indifference.[22]  Plaintiff's affidavit asserts that "befor[e] the grievance [was] filed on July 25[, 2017,] the nurse was made aware of my need to see the jail Doctor multiple times and was ignored."  (Dkt. No. 32, Attach. 1 at ¶ 12.)  It is unclear whether "the nurse" that Plaintiff refers to in his affidavit is Defendant Kinter.  In any event, Defendant Kinter's affidavit asserts the following: (1) the mental health

---

[21]    *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (holding that a plaintiff must demonstrate both the objective and subjective prongs to establish a deliberate indifference claim).

[22]    As set forth above in Part II. of this Report-Recommendation, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-movant is proceeding *pro se*.

records do not support Plaintiff's allegation that he was even seen on June 20, 2017, by the mental health unit (Dkt. No. 28, Attach. 5 at ¶¶ 3-4), (2) instead, Plaintiff was seen on June 20, 2017, by the medical unit and there is no mention in the June 20, 2017, medical record of Trazadone (*id.* at ¶ 5), (3) as soon as Plaintiff filed a grievance regarding his request to see the doctor, he was added to the list to see the doctor (*id.* at ¶¶ 6-8), and (4) thereafter, Plaintiff was seen by the physician (or physician's assistant) pursuant to the regular course of operation of CCCF's medical unit (*id.* at ¶¶ 10-16). As a result, Plaintiff failed to establish that Defendant Kinter's actions were reckless or executed with a disregard to Plaintiff's health.[23]

Because the record before the Court, even when construed most favorably towards the Plaintiff, fails to contain evidence from which a reasonable factfinder could conclude that Plaintiff has met both the objective and subjective requirements for establishing a claim of deliberate indifference, I recommend that it be dismissed.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 28) be **DENIED** regarding Plaintiff's excessive force claim against Defendants Newell and Baker and **GRANTED** regarding Plaintiff's deliberate indifference claim against Defendant Kinter.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN**

---

[23]    "Inmates do not have a constitutional right to the treatment of their choice." *Venettozzi*, 2018 WL 7917917, at *20 (citing *Wright v. Genovese*, 694 F. Supp. 2d 137, 155 (N.D.N.Y. 2010) (Baxter, M.J.) ("Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm."); *Daniels v. Williams*, 474 U.S. 327, 335-36 (1986) (concluding that negligence is not a cognizable claim under 42 U.S.C. § 1983); *Kucharczyk v. Westchester Cnty.*, 95 F. Supp. 3d 529, 537 (S.D.N.Y. 2015) ("[M]ere negligence is not enough to state a claim for deliberate indifference.")).

**FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

It is hereby respectfully **ORDERED** that the Clerk of the Court shall file a copy of this Report-Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[24]

Dated: October 15, 2019
Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[24]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).